IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| VERNON LEANDIS CHARLES | § | |
| v. | § | CIVIL ACTION NO. 5:20cv184 |
| OFFICER IGNACIO CASTRO, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Vernon Leandis Charles, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are TDCJ Officers Ignacio Castro and Samuel Nations, law librarian Rodderick Wells, Warden Michael Bates, and the spouses of these officers, whom Plaintiff says he is naming in the lawsuit "as a protection to Plaintiff against their husbands' unlawful dissipation of assets or attempted conveyances of property in an attempt to defraud legitimate creditors."

**I. The Plaintiff's Complaint**

Plaintiff was directed to file an amended complaint setting out a short and plain statement of his claim, including specific facts, and has filed an amended complaint. In his complaint and amended complaint, Plaintiff states on September 19, 2018, Officer Castro came to Plaintiff's cell, packed all his property, and took it to 1 Building Central without Plaintiff's permission, in violation of TDCJ rules, policy, and procedure. He states Officer Castro passed Plaintiff's property to Law

Librarian Wells and Officer Nations as part of a conspiracy, and the officers read his legal work and confiscated it. Plaintiff states Law Librarian Wells then wrote him a falsified disciplinary case.

According to Plaintiff, he asked Officer Castro why the officer was packing his property, and Castro told him he was under investigation. Officer Castro explained that he was the Safe Prisons Officer, along with Sgt. Candice Oakes, and Plaintiff should just wait in the dayroom. Plaintiff asked what authority Castro had to do this, but the officer refused to answer.

Plaintiff states he began to tell Officer Castro the policy, but Officer Castro called for assistance using the ICS system, which is an emergency call for assistance. The officer had Plaintiff removed to the hallway, where he was confronted by Officers Jackson and Hawkins as well as Sgt. Oakes. They searched him, handcuffed him, and took him to One Building, where he was placed in a holding cell.

About two hours later, Plaintiff states Officer Castro brought him back his property, except for his legal work, telling him that he, Plaintiff, would be receiving a disciplinary case for his legal work. Plaintiff asked for the confiscation papers, and Officer Castro said not to worry, he would get them. Plaintiff stated this was not the proper policy for dealing with legal work, but Officer Castro did not reply.

The next day, Plaintiff states he was called to the law library, where Officer Nations gave him some more property which had been mixed in with the legal work. He then received a disciplinary case from Officer Castro for creating a disturbance, which Plaintiff contends was retaliation for his questioning Officer Castro's violation of the policy.

Plaintiff states after the officers looked at his legal work, he received a falsified disciplinary case for fraudulent filing of a finance statement. He filed a grievance and the case was overturned, but his legal work was not returned. Instead, Law Librarian Wells re-wrote the disciplinary case, including the necessary documents as though they had been there from the first case. He states that the second case was not adjudicated, but his legal property has never been returned.

Plaintiff asserts Officer Castro violated his right by seizing his legal materials, and that Law Librarian Wells and Officer Nations conspired with him in this. He contends Law Librarian Wells violated TDCJ policy by searching and seizing his legal property without due process, based upon only a mere suspicion that Plaintiff was in possession of Uniform Commercial Code materials. Officer Nations committed trespass by searching, seizing, and confiscating his legal work, and Warden Bates aided and abetted the other defendants by providing documents after the fact and failing to correct their misconduct. For relief, Plaintiff asks in his original complaint for $10,000 in compensatory damages and $90,000 in punitive damages, payable in "constitutional lawful money redeemable in gold or silver coin as set forth in Article I, Section 10 of the Constitution." He also asks that his legal work be returned and that his legal fees be refunded.

Plaintiff filed an earlier lawsuit concerning this same incident, styled <u>Charles v. Castro, et al.</u>, civil action no. 5:20cv42. This earlier lawsuit was dismissed without prejudice for failure to prosecute or to obey an order of the Court. The complaint in the earlier lawsuit contains a purported "security agreement," executed by Charles as the debtor in favor of "Santemu Aakhu," which is evidently an alias for Charles himself. The "security agreement" and other documents attached to the complaint, including "notices of lien," a "copyright notice," a "hold harmless and indemnity agreement," a "limited power of attorney," a "declaration and certificate of sovereign status" attesting that he is bound only by the common law, and a "commercial notice of trade name" are replete with reference to and terminology from the UCC. Plaintiff included a copy of the disciplinary case which he received, which charged him with possessing completed UCC forms, a felony as defined by the laws of the State of Texas in violation of Texas Penal Code 37.101, fraudulent filing of a financial statement. (Docket no. 1-1, p. 43 in cause no. 5:20cv42).

## II. Discussion

The Texas Department of Criminal Justice has a policy prohibiting inmates from possessing UCC materials. <u>Hodson v. Moore</u>, civil action no. 2:15cv453, 2016 U.S. Dist. LEXIS 130883, 2016 WL 5341926 (S.D.Tex., September 23, 2016). This policy is intended to address the practice of

3

inmates filing fraudulent liens against public officials. *See* Burns v. Fox, civil action no. 1:11cv494, 2017 U.S. Dist. LEXIS, 28570, 2017 WL 831361 (E.D.Tex., March 1, 2017, appeal dismissed).

In Burleson v. Pegoda, 726 F.App'x 234, 2018 U.S. App. LEXIS 15318, 2018 WL 2750295 (5th Cir., June 7, 2018), the plaintiff Samuel Burleson challenged TDCJ's policy of not allowing him to access or possess the Uniform Commercial Code or the Texas Business and Commerce Code. The Fifth Circuit determined that Burleson failed to show the prison's policy of prohibiting possession of these materials was not rationally related to a legitimate penological interest, *citing* Overton v. Bazzetta, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). The Fifth Circuit also stated that although prisoners have a constitutionally protected right to access the courts, this right encompasses only a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or the conditions of their confinement. Burleson presented no coherent argument showing that he was denied the opportunity to file a non-frivolous legal claim challenging his convictions or the conditions of his confinement as a result of the defendants' actions. The court therefore dismissed Burleson's appeal as frivolous. *See also* Williams v. Stephens, 547 F.App'x 599, 2013 U.S. App. LEXIS 23502, 2013 WL 6154138 (5th Cir., November 22, 2013) (upholding prison officials' seizure of UCC documents where prisoner failed to show an injury, failed to show that the seizure was not rationally related to legitimate penological interests, and claims of violations of TDCJ policy did not set out a constitutional claim).

Plaintiff refers to his documents as "legal papers," but his pleadings make clear that these were purported UCC documents, which prison policy prohibits him from possessing. Prisoners have no protected property interest in possessing contraband. Sullivan v. DeRamcy, 460 F.App'x 374, 2012 U.S. App. LEXIS 2761, 2012 WL 425788 (5th Cir., February 10, 2012); *see also* Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984) (inmate "cannot seriously argue" that he has a protected interest in contraband property found in his cell); Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006). The confiscation of contraband UCC documents, which Plaintiff was prohibited from possessing, does not violate any constitutionally protected liberty or property interests.

Furthermore, although Plaintiff refers to his documents as "legal papers," he has not shown any constitutionally cognizable injury from their confiscation. The Fifth Circuit has explained that the right of access to legal materials is simply an offshoot of the right of access to court, because the court's main concern is protecting the ability of the inmate to prepare a petition or complaint. Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986).

While inmates therefore have a right of access to court, an actual injury must be shown to set out a violation of this right. Lewis v. Casey, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Mann, 796 F.2d at 83. The Supreme Court provided the following examples of "actual injury":

> [The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 351; see also McIntosh v. Thompson, 463 F.App'x 259, 2012 U.S. App. LEXIS 3711, 2012 WL 602437 (5th Cir., February 24, 2012) (even if the destruction of the inmate's legal paperwork restricted his constitutional rights, the inmate failed to allege an injury in fact, which is required to state a claim for denial of meaningful access to the courts).

In Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court explained the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. A plaintiff complaining of loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief must describe the predicate claim [i.e. the underlying case for which access to courts is sought] well enough to show the claim is not frivolous and the "arguable" nature of this claim is "more than hope." Id. at 415; see also Lewis, 518 U.S. at 353 and n. 3 (actual injury requires the underlying claim for which access to court was allegedly denied be arguable and non-frivolous; depriving

someone of a frivolous claim "deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions.")

In Mendoza v. Strickland, 414 F.App'x 616, 2011 U.S. App. LEXIS 2257, 2011 WL 396478 (5th Cir., February 3, 2011), the prisoner complained of interference with his right of access to court with relation to his criminal prosecution and his collateral post-conviction challenge. The Fifth Circuit determined the prisoner's complaint of interference with his criminal prosecution lacked merit because he was represented by counsel and thus his right of access to court had not been infringed. To the extent the prisoner complained of interference with his state post-conviction challenge, in which he proceeded *pro se*, the Fifth Circuit explained as follows:

> Even assuming arguendo that Mendoza's amended complaint includes a claim that the defendants interfered with the pursuit of his state post-conviction challenge, in which he proceeded pro se, we conclude that Mendoza failed to plead an actual injury, as required by the Supreme Court in Harbury. Under Harbury, the underlying cause of action is an element which must be affirmatively pleaded. 536 U.S. at 415, 122 S.Ct. 2179. In order to demonstrate actual injury, the complainant must show that the underlying cause of action was "arguable" and "non-frivolous." Id. Mendoza failed to provide any information about his state post-conviction application from which this court can conclude that the post-conviction application contained a "non-frivolous," "arguable" underlying claim.

Plaintiff has offered nothing to suggest that his "legal papers" were related to an underlying arguable and non-frivolous cause of action challenging his conviction or the conditions of his confinement. He has thus failed to allege an injury in fact, and his claim of denial of access to legal materials fails to state a claim upon which relief may be granted. McIntosh, 463 F.App'x at *261.

Although Plaintiff states in his original complaint that Officer Castro gave him a disciplinary case in retaliation for his questioning violations of policy and Wells, Nations, and Bates retaliated against him, he presents nothing more than a conclusory allegation of retaliation. The Fifth Circuit has held that to state a valid claim for retaliation under §1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Hines v. Marshall, slip op. no. 20-40444, 2021 U.S. App. LEXIS 29623, 2021 WL 4515392 (5th Cir., October 1, 2021), *citing* Jones

v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999); *see also* Petzold v. Rostollan, 946 F.3d 242, 252 (5th Cir. 2019).

This requirement places a heavy burden upon inmates, because mere conclusory allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997), *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

The Fifth Circuit has cautioned that "the prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166. The court went on to explain that district courts must "carefully scrutinize" claims of retaliation in order to ensure that prisoners do not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." Id..

Additionally, some acts, though perhaps motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006).

Plaintiff's conclusory allegation that the officers retaliated against him does not present a chronology from which retaliation may plausibly be inferred. Instead, it is little more than Plaintiff's personal belief that he was the victim of retaliation. As such, this allegation fails to state a claim upon which relief may be granted. *See* Ibenyenwa v. Wells, slip op. no. 21-40241, 2022 U.S. App. LEXIS 3663, 2022 WL 413941 (5th Cir., February 10, 2022).

Plaintiff complains that two disciplinary cases were written against him, but he concedes that the first one was overturned and the second one was never adjudicated. Accordingly, he has not

shown any harm resulting from the disciplinary cases. Sanchez v. Grounds, civil action no. 5:14cv64, 2015 U.S. Dist. LEXIS 40054, 2015 WL 1456068 (E.D.Tex., March 30, 2015); Powell v. Officer, civil action no. 2:10cv193, 2013 U.S. Dist. LEXIS 191908, 2013 WL 12085127 (N.D.Tex., July 12, 2013), *citing* Hyson v. Neubert, 820 F.Supp. 184, 190-91 (D. N.J. 1993), *Report adopted at* 2013 U.S. Dist. LEXIS 191897, 2013 WL 12085497 (N.D.Tex., July 31, 2013); *aff'd sub nom.* Powell v. Martinez, 579 F.App'x 250, 2014 U.S. App. LEXIS 16308, 2014 WL 4179483 (5th Cir., August 25, 2014).

Furthermore, there is no free-standing right to be free from false disciplinary cases. Palmisano v. Bureau of Prisons, 258 F.App'x 646, 2007 U.S. App. LEXIS 28581, 2007 WL 4372800 (5th Cir. 2007); *see* Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003). More specifically, the Fifth Circuit has stated there is no due process violation in the filing of an allegedly false disciplinary case if the prisoner is given an adequate state procedural remedy to challenge the accusations. Grant v. Thomas, 37 F.3d 632, 1994 U.S. App. LEXIS 43277, 1994 WL 558835 (5th Cir., September 23, 1994), *citing* Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984); *see also* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (prison inmate has no constitutional right against being falsely accused of conduct which might result in deprivation of liberty interest), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). Plaintiff offers nothing to suggest he did not have an adequate state procedural remedy to challenge the disciplinary cases through the prison hearing process and the grievance procedure. His allegation on this point fails to state a claim upon which relief may be granted.

Finally, Plaintiff asserts that the defendants were involved in a conspiracy against him. However, his allegations are entirely conclusory, and conclusory allegations of conspiracy are not sufficient to state a claim. Powell v. Martinez, 579 F.App'x at *252, *citing* McAfee v. 5th Circuit Judges, 884 F.2d 221, 222 (5th Cir. 1989), Additionally, a conspiracy claim is not actionable without an actual violation of §1983, which Plaintiff has failed to show. Hale v. Townley, 45 F.3d

8

914, 920 (5th Cir. 1995). Plaintiff has failed to state a claim upon which relief may be granted in this regard.

### III. Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees and identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts that, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. Montoya v. FedEx Ground Packaging System Inc., 614 F.3d 145, 149 (5th Cir. 2010), *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Hershey v. Energy Transfer Partners, L.P., 610 F.3d 239, 245 (5th Cir. 2010); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). This plausibility standard is not akin to a probability requirement, but asks for more than a possibility that the defendant has acted unlawfully. Twombly, 550 U.S. at 556.

Detailed factual allegations are not required, but the claim must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 677-78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Id. at 678.

A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability, or if a complaint lacks a factual allegation regarding any

9

required element necessary to obtain relief. Rios v. City of Del Rio, Tex., 444 F.3d 417, 421 (5th Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. Chhim v. University of Texas at Austin, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010), *citing* Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios, 444 F.3d at 421.

The Fifth Circuit has explained that while *pro se* complaints are construed liberally, the court is still bound by the allegations of the complaint and is not free to speculate that the plaintiff "might" be able to state a claim if given yet another opportunity to amend the complaint. Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). The court explained as follows:

> For example, if an IFP plaintiff, in amending his complaint through a response to a questionnaire, alleges in his response that he received inadequate medical care while incarcerated, we should not reverse the dismissal of the complaint on the basis that the plaintiff could possibly add facts that would demonstrate that he was treated with deliberate indifference in the medical care that he received. As another example, if an IFP prisoner asserts in the questionnaire response that he has been denied recreation time, we should not reverse dismissal on the ground that he might also be able to assert a claim that the denial was in retaliation for his having filed a grievance.

Id. at 97.

As set out above, Plaintiff had an opportunity to amend his complaint and did so. A review of his claims in both the original and amended complaints demonstrates Plaintiff has failed to state a claim upon which relief may be granted. His lawsuit may therefore be dismissed.

## RECOMMENDATION

It is accordingly recommended that the above-styled civil action be dismissed without prejudice for failure to state a claim upon which relief may be granted.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. See Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**SIGNED this 18th day of February, 2022.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE